IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

IN RE:  IRA ROGERS, DEBTOR                CASE NO.: 5:13-bk-14339
                                          CHAPTER 13

IN RE:  TRACEY LAWSON, SR., DEBTOR        CASE NO.: 5:13-bk-14744
                                          CHAPTER 13

## MEMORANDUM OPINION

In these two otherwise unrelated bankruptcy cases, the debtor's counsel and the chapter 13 trustee seek a judicial resolution to an issue concerning attorney's fees. This Memorandum Opinion emphasizes the Ira Rogers case but also disposes of the Tracy Lawson, Sr. proceeding.

The law firm of Niblock & Bueker ("Niblock"), on its own behalf and not as counsel for the debtor, filed its *Motion to Compel Trustee to Deliver Debtor Refund to Debtor's Attorney of Record* ("Motion to Compel") to which Jack W. Gooding, the Chapter 13 Standing Trustee ("Trustee"), filed his *Trustee's Response to Motion to Compel Trustee to Deliver Debtor Refund to Debtor's Attorney of Record*. The Trustee also filed his *Trustee's Motion to Disburse Remaining Funds Directly to Debtor* ("Motion to Disburse") to which Niblock filed its *Response to Trustee's Motion to Disburse Remaining Funds Directly to Debtor*. These matters were collectively tried on August 13, 2014, and taken under advisement. For the reasons stated herein, the Motion to Compel is denied; the Motion to Disburse is granted upon conditions. Niblock has fifteen days from the entry of this Memorandum Opinion to file an application for administrative expenses pursuant to section 503(b) should it desire to do so. The Trustee is directed to delay distribution until such time as the application, if filed, is considered.

Entered On Docket: 09/22/2014

## I. Jurisdiction

This court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334 and 157 as well as 11 U.S.C. § 105.  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (K), and (O).  The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 9014 and 7052.

## II. Introduction

In cases where a debtor's petition is dismissed prior to confirmation of a plan, chapter 13 standing trustees frequently have in their possession pre-confirmation monthly payments made by the debtor pursuant to section 1326(a)(1)(A).  After dismissal, the Arkansas chapter 13 standing trustees have traditionally remitted those funds directly to debtor's counsel.  As a general rule, debtor's counsel uses possession of the check, whether made payable to the debtor or the debtor and debtor's counsel, to enforce payment of accrued but unpaid attorney's fees.  Here, the Trustee seeks to discontinue this procedure.  Instead, he wants to strictly comply with section 1326(a)(2) by remitting all payments received, after deducting any unpaid claims allowed under section 503(b), directly to the debtor.

Niblock objects to this procedural change.  In its Motion to Compel, Niblock asserts an attorney's lien pursuant to Arkansas law and states that the Trustee is obliged to honor that lien by remitting the funds directly to counsel.  Niblock would deduct its fee and remit the balance, if any, to the debtor.  At trial, Niblock expanded on its Motion to Compel in two principal regards: (1) Niblock indicated that it would accept the check in any form, including made payable solely to the debtor, as long as the check was sent to counsel instead of directly to the debtor; and (2) Niblock argued that the Trustee was obliged to honor contractual terms contained in its application for fees and its client fee agreement that compel the trustee to pay Niblock directly.

### III.  Findings of Facts

On the same day that the debtor filed his initial chapter 13 petition, August 1, 2013, Niblock filed its *Application for Attorney Fee* ("Application").[1]  (Rogers 1, at 2; Rogers 2; Rogers Stipulation Re Facts and Exhibits 2, Aug. 12, 2014, ECF No. 77.)  The Application sought a standard $3000 "no look" fee for pre-confirmation to confirmation services.  (Rogers 2, at 1.)  The Application recited that "these fees are completely earned upon confirmation."  (Rogers 2, at 1.)  Also, paragraph 5 provided as follows:

> 5.  [Debtor] specifically agrees that should the Chapter 13 case be dismissed or converted before confirmation due to the [debtor's] noncompliance (including but not limited to the failure to: attend 341(a) meetings, file required tax returns, fund the plan, cooperate in the filing of any required modification, or pay the filing fee), attorney's fees approved by the court shall be paid to the attorney from funds on hand prior to refund to the Debtor(s).

(Rogers 2, at ¶ 5.)

The Application is signed by an attorney with Niblock as well as the debtor.  (Rogers 2.)  The court, by its *Chapter 13 Order of Compensation for Pre-Confirmation Services* ("Order of Compensation"), dated August 5, 2013, approved the Application.  (Rogers 3.)  The Order of Compensation provided that "[b]efore the Court is the [Application] filed by debtor's counsel, [Niblock], for all services and costs reasonably necessary for obtaining initial confirmation of the plan."  (Rogers 3.)  Further, "[t]he sum of $3,000.00, including costs, is approved.  Because the debtor's counsel received the sum of $0.00 prior to filing of the original petition, the Trustee is hereby directed to pay the sum of $3,000.00 pursuant to 11 U.S.C. § 1326."  (Rogers 3.)

The Application and Order of Compensation are consistent with a "no look" fee arrangement typical in this and many other jurisdictions.  The arrangement is not codified in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure.  Rather, it is an election to

---

[1] Jack W. Gooding was appointed trustee in the debtor's case.

utilize a more streamlined procedure than the application process recognized in Federal Rule of Bankruptcy Procedure 2016. The parties also adhere to the *Guidelines for Compensation for Services Rendered and Reimbursement of Expenses in Chapter 13 Cases* ("Guidelines") promulgated by the Trustee. (Rogers 6.) The Guidelines recognize this "alternative to the application procedures outlined in [Rule 2016]." (Rogers 6, at ¶2.) Under the Guidelines, an attorney can elect to "file a 'short form' application for a summary compensation award of fees and costs in a Chapter 13 case for the services through confirmation of the plan." (Rogers 6, at ¶ 2.) Further, the "summary compensation award shall be deemed fully earned at the date of the confirmation of the Chapter 13 plan." (Rogers 6, at ¶5.) The Guidelines recognize the $3000 award as appropriate, which is consistent with the Application and commensurate Order of Compensation in this proceeding.

The Guidelines are expansive concerning payment of this "no look" fee upon confirmation. However, the Guidelines also reference instances where plans are not confirmed:

> 7. Because the "summary compensation award" pursuant to Paragraphs 3, 4 and 5 above is awarded "summarily" and without notice, the [Trustee] will not conclude that funds on hand upon dismissal of a case with an unconfirmed plan are an award pursuant to 11 U.S.C. § 503(b) without further order of the Bankruptcy Court.

(Rogers 6, at ¶ 7.)

The debtor's case did not result in a confirmed plan. (Rogers Stip. 2, ECF No. 77.) The court dismissed the case on February 11, 2014, due to the debtor's failure to make all of his pre-confirmation payments under a strict compliance order. (Rogers Stip. 2, ECF No. 77; Rogers 4.) As a result, the Trustee has $1100 in his possession representing pre-confirmation payments made to the Trustee pursuant to section 1326(a)(1)(A). (Rogers Stip. 2, ECF No. 77; Rogers 7.) At an unspecified juncture, the Trustee advised chapter 13 debtor attorneys that he would no

4

longer send them refund checks in cases where the plan had not been confirmed.  Rather, he intended to send the checks directly to the debtors.

Niblock responded to this changed procedure by a certified mail letter, return receipt requested, dated February 21, 2014 ("Notice").  (Rogers Stip. 2, ECF No. 77; Rogers 5.)  The letter and a one-page attachment were received by the Trustee on February 25, 2014.  (Rogers Stip. 2, ECF No. 77.)  The Notice purports to be both tailored individually to the Rogers case and generically to all chapter 13 debtors represented by Niblock.  Specifically, the Notice states that it "serve[s] notice that all [c]hapter 13 debtors represented by [Niblock] have consented to have debtor refund checks sent directly to this law firm."  (Rogers 5.)  The Notice then references an attorney's lien under Arkansas Code Annotated §§ 16–22–302 through 304 and "in accordance with the applications for attorneys' fees signed by the Debtor indicating that any fee refunds would be returned to their attorney."  (Rogers 5.)  The Notice concludes by demanding that the Trustee continue mailing debtor refund checks directly to Niblock.  (Rogers 5.)

At trial, Niblock introduced the last page of what is apparently a client retention agreement ("Agreement").  (Niblock 3.)  In paragraph 7, reference is made to the debtor's "Bankruptcy Cause of Action," but the redacted exhibit does not define that term.  (Niblock 3, at ¶ 7.)  Paragraphs 8 and 9 may also be pertinent:

> 8. ATTORNEY WILL RECEIVE FUNDS PAID IF DISMISSED   In the event this case is not confirmed, or in the event the case is dismissed before the full attorney's fee is paid, any portion of the fee that has not been received by attorney from the Trustee's office is still due and owing. In the event that the [Trustee] has money on hand, it is understood and agreed that my attorney is authorized to credit those funds toward the unpaid attorney's fee, if any, up to the amount of the fee due.
>
> 9. IRREVOCABLE POWER OF ATTORNEY   In the event the check from the Trustee is made payable to client, this contract and agreement gives full **irrevocable** Power of Attorney to [Niblock] to endorse this check and apply these proceeds to any unpaid attorney fee. It is understood and agreed that any money

5

>recovered by my attorney, over and above the full attorney fee, will be forwarded to me at my last known address.

(Niblock 3, at ¶¶ 8–9.)

The Agreement is typically signed by the debtor. Niblock testified that it is the firm's practice to endorse and deposit the check, deduct its attorney's fees, and remit any balance to the debtor.

Despite the Trustee's request, Niblock has elected not to file an application for administrative priority and commensurate payment pursuant to section 503(b). (Rogers Stip. 2, ECF No. 77.) Niblock testified that it wishes to avoid the effort and trouble, perceives the old system as sufficient, enjoys the benefits of an attorney's lien, and has concerns about a potential ethical conundrum in resisting dismissal while at the same time positioning itself under section 503 merely to protect its fees in case of dismissal. The Trustee objects to section 503(b) applications if they are filed too late or if no funds are on hand. The Trustee's office does check for pending section 503(b) applications prior to sending checks directly to the debtor.

Notwithstanding a failure to confirm a plan, Niblock testified that it provides numerous services to the debtor, including counseling the debtor, organizing and completing the schedules, and attempting to obtain confirmation. Niblock did not quantify a fee amount for its pre-confirmation services in cases that do not result in a confirmed plan.

## IV. Discussion

In its Motion to Compel, Niblock asserts an attorney's lien pursuant to Arkansas law and states that the Trustee is obliged to honor that lien by remitting the funds directly to counsel. Niblock would deduct its fee and remit the balance, if any, to the debtor. At trial, Niblock expanded on its Motion to Compel in two principal regards: (1) Niblock indicated that it would accept the check in any form, including made payable solely to the debtor, as long as the check

was sent to counsel instead of directly to the debtor; and (2) Niblock argued that the Trustee was obliged to honor contractual terms contained in its Application for fees and its client fee Agreement that compel the Trustee to pay Niblock directly. Distilled, the issue presented to this court is whether the contractual terms agreed to by the debtor or the presumed attorney's lien on funds held by the Trustee take precedence over the statutory scheme for the award of attorney's fees in chapter 13 cases as outlined in the Code and as supplemented by (1) a formalized "no look" fee arrangement and (2) an informal practice of remitting funds directly to the debtor's counsel. This court concludes that they do not.

The statutory scheme for the payment of attorney's fees in chapter 13 cases outlined in the Code is not preempted or supplanted by the supposed attorney's lien or Niblock's contract with the debtor. Presuming Niblock has a valid attorney's lien, neither the lien nor the contract between the attorneys and the debtor set forth the fee amount short of actual confirmation. The only approved and allowed fee under the Application is one contemplating performance through confirmation. No approved and allowed fee exists in circumstances where the case does not result in plan confirmation. Accordingly, the symbiotic application of sections 330(a)(4)(B), 1326(a)(2), and 503(b) result in judicial scrutiny, approval, and allowance of attorney's fees, a consequence wholly consistent with judicial review and control of attorney compensation in chapter 13 bankruptcy cases. Further, parties to an informal agreement may prospectively and with notice choose to deviate from or cease compliance with the informal procedure and insist on strict adherence to the Code.

The Code and accompanying Rules govern the compensation of attorneys in chapter 13 cases. Section 330(a)(4)(B) provides:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing

7

> the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B) (2014). The "other factors" set forth in section 330 consist of a nonexclusive list typically considered in the award of attorney's fees, including time, rate, and necessity.

Federal Rule of Bankruptcy Procedure 2016(a) governs applications for compensation and may, in this context, loosely be described as the "long form" manner of obtaining compensation for services in a chapter 13. Specifically, Rule 2016 requires detailed exposition concerning the services rendered for which compensation is sought either on an interim or final basis. In this instance, however, Niblock opted to file "a 'short form' application [under the Guidelines] for a summary compensation award of fees and costs in a Chapter 13 case for the services *through confirmation of the plan."* (Rogers 6, at ¶ 2) (emphasis added). This "short form" application procedure and the resulting "no look" fee of $3000 is subject to the Guidelines, which are specific in cases where a plan is not confirmed.

> 7. Because the "summary compensation award" pursuant to Paragraphs 3, 4 and 5 above is awarded "summarily" and without notice, the [Trustee] will not conclude that funds on hand upon dismissal of a case with an unconfirmed plan are an award pursuant to 11 U.S.C. § 503(b) *without further order of the Bankruptcy Court*.[2]

(Rogers 6, at ¶ 7) (emphasis added).

In cases where the debtor's bankruptcy does not result in a confirmed plan, Niblock seeks to protect its fees by direct receipt of the check from the Trustee, rather than filing an application

---

[2] The debtor's proposed plan of reorganization contains a number of provisions relative to attorney's fees, including pre-confirmation fees. These provisions, however, are ignored for purposes of this opinion as the debtor's plan was never confirmed.

8

under section 503(b). The Trustee has now elected to require debtor's counsel to strictly adhere to both the Guidelines and section 1326 by remitting funds directly to the debtor, deducting only those attorney's fees properly approved and allowed pursuant to section 503(b). Section 1326(a)(2) is relevant to the Trustee's decision and provides in part:

> (2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) *to the debtor*, after deducting any unpaid claim allowed under section 503(b).

11 U.S.C. § 1326(a)(2) (2014) (emphasis added).

Under section 1326, the Trustee distributes attorney's fees in either one of two fashions: (1) through a confirmed plan to the extent that the attorney has not received the full balance of his or her *allowed* "no look" fee,[3] or (2) in the event of an unconfirmed plan, paying the attorney by deduction of any "unpaid claim allowed under section 503(b)." 11 U.S.C. § 1326(a)(2).

Succinctly, the statutory scheme fully contemplates court approval and allowance of chapter 13 attorney's fees when cases result in either confirmation or dismissal. In the event of dismissal, an attorney is fully protected, as much as any attorney's lien or contractual assignment, to the full extent of funds remaining on hand with the Trustee if the attorney files a timely application under section 503(b). See *In re Harris*, 258 B.R. 8 (Bankr. D. Idaho 2000). In *Harris*, the debtor's attorney asserted an attorney's lien and asked the trustee to remit funds based on the client's contractual consent. *Harris*, 258 B.R. at 11. The court stated:

> The plain language of the statute, then, provides a road map to a Chapter 13 debtor's attorney seeking payment from the trustee for services provided in connection with the case, upon dismissal of the case without confirmation of a plan: after compliance with the application and allowance process envisioned by

---

[3] *See* sections 1326(a)(2) and (b)(2) as well as section 507(a)(2).

9

>   Section 503(a), the attorney can be paid from undistributed funds held by the Chapter 13 Trustee before those funds are returned to the debtor.

*Id.*

Furthermore, this statutory scheme is consistent with the Application, the Order of Compensation, and the Guidelines. The Application filed by Niblock on August 1, 2013, the same day as the firm filed the Chapter 13 petition, specifically states that if the case is dismissed before confirmation, "attorney's fees *approved by the court* shall be paid to the attorney from funds on hand prior to refund to the Debtor(s)." (Rogers 2, at ¶ 5) (emphasis added). The Order of Compensation approved $3000 as a "no look" fee and directed the Trustee to pay that sum "pursuant to 11 U.S.C. § 1326," but the award is specifically "for all services and costs reasonably necessary *for obtaining initial confirmation of the plan*." (Rogers 3) (emphasis added). The Guidelines specifically provide that:

>   7. Because the "summary compensation award" pursuant to Paragraphs 3, 4 and 5 above is awarded "summarily" and without notice, the [Trustee] *will not conclude that funds on hand upon dismissal of a case with an unconfirmed plan are an award pursuant to 11 U.S.C. § 503(b) without further order of the Bankruptcy Court*.

(Rogers 6, at ¶ 7) (emphasis added).

Niblock is unwilling to file an application under section 503(b). An application, if filed and approved, would allow and include the entirety of Niblock's attorney's fees pursuant to section 503(b)(2), which encompasses "compensation and reimbursement awarded under section 330(a) of this title." 11 U.S.C. § 503(b)(2) (2014). Again, Niblock's interests would be as well protected under this statutory scheme as any attorney's lien or contractual agreement with the debtor.[4]

---

[4] Any award under section 503(b), by contract, or pursuant to an attorney's lien would, of course, always be limited to the funds available to the Trustee.

10

The "no look" fee is a flat amount through confirmation. No established, agreed, or allowed rate or fee amount exists for attorney's services in the event that a plan is not confirmed and a section 503(b) motion is not filed. The court in *Garris* cogently recognized the inherent gap that presents itself when a chapter 13 is dismissed prior to confirmation and fees were not quantified, approved, or allowed by the court.

> When a chapter 13 plan is confirmed, there is an obvious and demonstrated benefit to the debtor and, presumably, counsel's services contributed to completion of the case. In most cases, additional proof will not be needed. But when cases are dismissed prior to plan confirmation, Counsel must provide an explanation in the fee application and evidence that counsel provided substantial, valuable professional services including investigation, evaluation, and counseling that was intended and designed to achieve an objective appropriate for chapter 13 cases.

*In re Garris*, 496 B.R. 343, 350 (Bankr. S.D. N.Y. 2013) (citations omitted).

The Code and Rules provide the means by which attorney's fees are scrutinized and allowed. Permitting an assignment or an attorney's lien against a finite sum but in an undefined amount would completely circumvent this court's review, approval, and allowance process. Again, as stated in *Garris*:

> This is not the only problem with using an assignment agreement in place of obtaining an allowed section 503(b) claim. It is unclear whether an attorney for a debtor is entitled to collect fees without court approval—even here, in a dismissed case where there is a contractual arrangement between the debtor and the debtor's attorney. The re-vestment of estate property with a debtor upon dismissal of a bankruptcy case "does not render any private contract for attorney fees incurred during the case enforceable without judicial review under § 330." The Revision Notes to 11 U.S.C. § 330 underscore that "fees are not a matter for private agreement" in bankruptcy cases due to the public-interest concerns inherent in the award of such fees." In other words, a fee that is not enforceable under the Bankruptcy Code is not transformed, by virtue of a private agreement, into an enforceable one after a case is dismissed, even if such an agreement would be otherwise enforceable under state law. "The oversight of the bankruptcy court . . . must not end upon the mere dismissal of a case, lest overreaching counsel could frustrate the requisite court review by the simple medium of encouraging the debtor to seek dismissal."

11

*Id.* at 353–54 (citations omitted).

While the record in this case contains absolutely no evidence or implication of overreaching, bankruptcy courts clearly conduct many administrative acts in dismissed but not yet closed cases that frequently encompass defining and ruling on attorney's fees pursuant to Rule 2016 and sections 330 and 503.

This court does not consider its decision rendered herein to in any way conflict with two appropriate and well-reasoned opinions cited by Niblock—*Rice v. Ables* (*In re Price*), 484 B.R. 870 (Bankr. E.D. Ark. 2013) and *In re Vaughter*, No. BR13–41425, 2014 WL 806207 *2 (Bankr. D. Neb. Feb. 28, 2014). *Price* involved a garnishment by a judgment creditor for a sum certain against the proceeds held by the chapter 13 trustee after the dismissal of the case without a confirmed plan. The creditor simply exercised his rights under state garnishment law following the lifting of the stay and the revesting of the property in the debtor. *Vaughter* involved a Notice of Levy from the Nebraska Department of Revenue in identical circumstances. The Department of Revenue asserted a lien pursuant to Nebraska state statutes. The *Vaughter* court concurred with *Price*, stating:

> The statute [section 1326] requires return of the funds by the trustee to the debtor, just like a deposit agreement requires return of bank account funds to the depositor—but that does not preempt the remedies of creditors under state or federal law. Accordingly, funds deposited with the trustee, just like funds deposited with a bank, are subject to attachment, levy, or garnishment once the automatic stay has terminated.

*Vaughter*, at *2.

This court concurs. But, after dismissal, a bankruptcy court has no statutory interest in or right to scrutinize creditor's claims in the above instances, and they may exercise their state law collection rights. That is, however, not the case with respect to attorney's fees payable to debtor's counsel. The Code contemplates direct involvement in the award and allowance of

12

attorney's fees. Niblock has not yet had its claim for fees reduced to a sum certain or allowed under section 330(a)(4)(B) or section 503(b) as there was no confirmed plan. Proceeding otherwise would render meaningless the statutory scheme provided in the Code, the protections the Code affords the debtor and his attorney, and this court's ability to scrutinize and award compensation to attorneys who have chosen to practice chapter 13 bankruptcy under the auspices of the Code.

## V. Conclusion

For the reasons stated above, the Motion to Compel is denied; the Motion to Disburse is granted upon conditions. Niblock has fifteen days from the entry of this opinion to file an application for administrative costs pursuant to section 503(b) should it desire to do so. The Trustee is directed to delay distribution until such time as the application, if filed, is considered. Further, this Memorandum Opinion does not specifically preclude chapter 13 trustees from forwarding funds directly to debtor's counsel should the trustee elect to do so.

IT IS SO ORDERED.

Dated this 22nd day of September, 2014.

_____
RICHARD D. TAYLOR
UNITED STATES BANKRUPTCY JUDGE


cc: Ira Rogers
      Tracey Lawson, Sr.
      G. Gregory Niblock
      Jeremy Bueker
      Kimberley Woodyard
      Jack W. Gooding
      Charles W. Tucker